BYRNES, Judge.
Lionel Milton and Wilma Blackman appeal a judgment sustaining a peremptory exception of prescription, dismissing Dr. William B. Smith with prejudice as a party defendant. We affirm.
While under the treatment of Dr. Smith at Mercy Hospital, Mrs. Leaster Milton, wife of plaintiff Lionel Milton and mother of plaintiff Wilma Blackman, participated in a study sponsored by Merrell-Dow Research Institute in which an experimental drug Enoximone was administered to patients with congestive heart failure. On September 14, 1985, Mrs. Leaster Milton signed a consent form. Several months later, Mrs. Milton died on March 11, 1986. Mr. Milton had no contact with Dr. Smith or Merrell-Dow following his wife’s death. Plaintiffs allege that they first discovered a cause of action relating to consent and administration of the drug when an employee of Dr. Smith went to Mr. Milton's residence on or about August 7, 1989 to secure his signature on a consent form in connection with the study.
On or about July 25, 1990 plaintiffs filed a medical malpractice claim with the Commissioner of Insurance against Mercy Hospital, Merrell-Dow Pharmaceuticals, (Mer-rell-Dow) and Dr. Smith, alleging defendants’ failure to obtain informed consent and to follow proper procedures for human experimentation. Mercy Hospital was dismissed from that claim on an exception of prescription. That decision was maintained in Civil District Court and is now on appeal in this court. No exception of prescription was filed as to the other defendants in that case.
On August 6, 1990, plaintiffs filed a petition in Civil District Court against Merrell-Dow and Dr. Smith as Merrell-Dow’s agent and/or employee, alleging that Dr. Smith administered Enoximone to Mrs. Milton in violation of LSA-R.S. 40:1299.40, the Louisiana Informed Consent Statute, as well as in violation of federal regulations governing consent for the administration of experimental or investigational drugs.
Dr. Smith filed a peremptory exception of prescription and alternative dilatory exception of prematurity in the instant case. After a hearing on the exceptions, the District Court maintained the exception of prescription and dismissed Dr. Smith from this suit with prejudice. Plaintiffs appeal that ruling.
On appeal, plaintiffs contend that the trial court erred in: (1) finding that their petition states an action against Dr. Smith for medical malpractice, subjecting the claims to a three-year prescriptive period; and (2) rejecting the application of the contra non valentem to interrupt prescription.
Plaintiffs argue that their claim is a damage action against the drug manufacturer and Dr. Smith, acting as an agent by soliciting in a non-FDA approved study without obtaining proper informed consent. Plaintiffs claim that Dr. Smith advised Mrs. Milton that each participant would receive $2,000 for participating in the study; however, Dr. Smith later advised Mrs. Milton that the money was no longer being offered. Plaintiffs aver that they have a claim for breach of contract by Merrell-Dow and Dr. Smith for failure to pay the promised $2,000. Plaintiffs further allege that during the period of administration of the drug, Mrs. Milton’s medication was abruptly discontinued as a result of either Dr. Smith’s failure to order the medication on her chart or the failure of nursing personnel of Mercy Hospital to administer the *1201 medication. The medication was resumed before Mrs. Milton died.
Louisiana R.S. 9:5628, provides:
A. No action for damages for injury or death against .any physician ... as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
Louisiana R.S. 40:1299.41(A) provides the following definitions in pertinent part:
(1) “Health care provider” means a person ... licensed by this State to provide health care or professional services as a physician....
(2) “Physician” means a person with an unlimited license to practice medicine in this state.
(3) “Patient” means a natural person who receives or should have received health care from a licensed health care provider, under a contract, express or implied.
* * * * * *
(7) “Tort” means any breach of duty or any negligent act or omission proximately causing injury or damage to another....
******
(8) “Malpractice” means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
(9)“Health care” means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient’s medical care, treatment or confinement. [Emphasis added.]
The private Medical Malpractice Act protects against statutorily excessive judgments based not just on malpractice, but on virtually any breach of duty or contract causing injury or damage. Sibley v. Board of Sup’rs of Louisiana State University, 477 So.2d 1094, 1102 (La.1985); Swindell v. Llewellyn, 526 So.2d 446 (La.App. 4th Cir.1988). For purposes of determining whether a cause of action is governed by the Medical Malpractice Act, a “tort” is any breach of duty or any negligent act or omission proximately causing injury or damage to another. Pitre v. Hospital Services Dist. No. 1 of Parish of Terrebonne, 532 So.2d 501 (La.App. 1st Cir.1988). The words, “act, omission or neglect,” as used in the Louisiana three-year medical malpractice statute of limitations, mean an intentional or unintentional tort, and thus, the three year bar applies even where the malpractice plaintiff alleges an intentional act or omission. Montagino v. Canale, 792 F.2d 554 (C.A.5 (La.) 1986). A patient’s claim based on lack of informed consent is required to be submitted to a medical review panel prior to commencement of a lawsuit, notwithstanding the adoption of the uniform consent law. Hodge v. Lafayette General Hospital, 399 So.2d 744 (La.App. 3rd Cir.1981). See also Gurdin v. Dongieux, 468 So.2d 1241 (La.App. 4th Cir.1985), writ denied 474 So.2d 946 (La.1985); Crawford v. Touro Infirmary, 552 So.2d 427 (La.App. 4th Cir.1989). Any conduct complained of should be handled under the procedure of the Louisiana Medical Malpractice Act if it can reasonably be said that it comes within the definitions of the *1202 act, even though there may be alternative theories of liability. Cashio v. Baton Rouge General Hospital, 378 So.2d 182 (La.App. 1st Cir.1979). Plaintiffs’ allegations against Dr. Smith are based on claims of failure to follow proper procedures in administering the drug, failure to obtain informed consent, and failure to pay Mrs. Milton for her participation in the program. These claims arise out of patient care or involve the issue of informed consent. They are actions in tort and contract which clearly are governed by LSA-R.S. 9:5628.
Plaintiffs alternatively argue that the doctrine of contra non valentem applies to interrupt prescription under LSA-R.S. 9:5628. The only category of the doctrine of contra non valentem that may interrupt prescription is the situation in which the tortfeasor himself has done something to prevent the injured party from asserting his cause of action. Whitnell v. Menville, 540 So.2d 304, 308 (La.1989); Rajnowski v. St. Patrick’s Hosp., 564 So.2d 671 (La.1990). The plaintiff has the burden of proving the grounds for interruption of prescription that he may allege. Whitnell, supra, 540 So.2d at 310. Plaintiffs assert that because they were ignorant of the facts on which their cause is based until August, 1989 when an employee of Dr. Smith allegedly attempted to secure the signature of Lionel Milton’s name on a consent form. Plaintiffs allege that Dr. Smith concealed the fact that he did not have sufficient informed consent for Mrs. Leaster Milton’s participation in the drug study. Plaintiffs stated that they had no contact with Dr. Smith following Ms. Milton’s death. Plaintiffs had in their possession a copy of the document which Mrs. Milton signed. The consent form stated, “I have received a copy of this consent form.”
It is unnecessary to allow plaintiffs time to amend their petition under LSA-C.C.P. art. 934 where they cannot point out possible grounds to overcome the exception. Whitnell, supra, 540 So.2d at 309. In their petition, plaintiffs have alleged intentional concealment on the part of Dr. Smith to interrupt prescription; however, we find no evidence to support a conclusion that Dr. Smith intentionally prevented the plaintiffs from learning of their cause of action during the three-year period within which plaintiffs could have filed their claims. Therefore, the doctrine of contra non valentem does not apply and plaintiffs’ action against Dr. Smith has prescribed under LSA-R.S. 9:5628.
Accordingly, the judgment of the trial court is affirmed at plaintiffs’ costs.
AFFIRMED.