FREDERICKA HOMBERG WICKER, Judge.
IgThe plaintiffs/appellants, Mr. Malcolm Matherne and Mrs. Mitzi Matherne, filed suit in the 24th Judicial District Court of Jefferson Parish, Louisiana on June 23, *536 2011, against the defendant/appellee, Jefferson Parish Hospital No. 1 d/b/a West Jefferson Medical Center (“West Jefferson”). The Mathernes sought damages for an injury Mrs. Matherne sustained when she fell as she was being transported, by West Jefferson’s employee, to her hospital bed. West Jefferson excepted to the petition on July 28, 2011, on the grounds of prematurity. West Jefferson alleged that Mrs. Matherne’s petition was premature because she failed to first present her claim to the medical review panel pursuant to La. R.S. 40:1299.41 of the Louisiana Medical Malpractice Act (“LMMA”). The court sustained the exception on September 20, 2011, and dismissed the plaintiffs’ ^petition. The Mathernes appeal the trial court’s ruling arguing that it erred in granting the exception of prematurity and dismissing their claim.
Discussion
The LMMA is set forth in La. R.S. 40:1299.41 et seq. The LMMA defines “malpractice” as
any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient,.... (Emphasis Added).
La. R.S. 40:1299.41(13)
A medical malpractice claim against a private qualified health care provider is subject to dismissal on an exception of prematurity if the claim has not first been presented to a medical review panel. La. R.S. 40:1299.47(A)(l)(a); La-Coste v. Pendleton Methodist Hosp., L.L.C., 07-0008, 07-0016, p. 6 (La.9/5/07), 966 So.2d 519, 523. The dilatory exception of prematurity questions whether the cause of action has matured to the point where it is ripe for judicial determination. Williamson v. Hosp. Sen. Dist. No. 1 of Jefferson, 04-0451, p. 4 (La.12/1/04), 888 So.2d 782, 785, citing, La. C.C.P. art. 926. The burden of proving prematurity is on the mover. Id. Therefore, West Jefferson must show that it is entitled to a medical review panel. Thus, the question before this Court is whether the Math-ernes’ claim falls within the statutory definition of malpractice.
The Louisiana Supreme Court has repeatedly emphasized that the LMMA and its limitations on tort liability for a qualified health care provider apply only to claims “arising from medical malpractice,” and that all other tort liability on the part of the qualified health care provider is governed by general tort law. LaCoste, supra, at 524. We, therefore, conduct a de novo review of the trial court’s grant of |4the dilatory exception of prematurity because the issue of whether a claim sounds in medical malpractice involves a question of law. Hernandez v. Diversified Healthcare-Abbeville, LLC, 09-0546, pp. 1-2 (La. App. 3 Cir. 11/4/09), 24 So.3d 284, 285, writ denied, 09-2629 (La.2/12/10), 27 So.3d 849.
In Coleman v. Deno, 01-1517, (La.1/25/02), 813 So.2d 303, the Louisiana Supreme Court set forth a six-part test to determine whether a negligent act is covered by the LMMA. The Coleman factors include: 1) whether the particular wrong is “treatment related” or caused by a dereliction of professional skill; 2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; 3) whether the pertinent act or omission involved assessment of the patient’s condition; 4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; 5) whether the injury *537 would have occurred if that patient had not sought treatment, and 6) whether the tort alleged was intentional. Id. at 315-16.
Applying the Coleman factors to the case before us, we find that the alleged negligent acts complained of are covered under the LMMA.
The first Coleman factor considers whether the particular wrong is “treatment related” or caused by a dereliction of professional skill. The record reflects that West Jefferson has an organizational-wide “Fall Assessment and Prevention” program, which focuses on assessing and identifying patients at risk for falls and on educating staff on fall prevention. The program mandates that West Jefferson employ a scoring system — the Morse Risk Fall Assessment — to determine all patients’ risk for falls. Some factors that comprise the risk assessment include fall history, ambulatory aid, and gait, which is the manner of | ¿movement. Once all factors are considered, patients are then assigned a score which is indicative of their risk for falls. Patients scoring 45 or higher are considered high risk.
In this case, West Jefferson performed a risk assessment on Mrs. Matherne on September 2, 2010, at 7:30 A.M. — approximately five hours before the fall occurred. The assessment indicated that Mrs. Math-erne had a history of falls and a weakened gait. Her overall fall-risk score at that time was 70, which is high risk. Because of the high-risk score, West Jefferson’s fall prevention program should have been implemented as part of Mrs. Matherne’s treatment. Because fall assessment is part of the treatment for all patients at West Jefferson, the first Coleman factor is satisfied.
Next, we consider the second Coleman factor, which is whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached. Medical evidence is necessary in this case to determine whether West Jefferson breached the standard of care when an employee single-handedly attempted to transport a 250-pound elderly woman, suffering with a hematoma on her leg, from a bedside commode to her bed.
The third Coleman factor considers whether the pertinent act or omission involved assessment of the patient’s condition. This factor is easily satisfied because West Jefferson requires an assessment of all patients to determine their fall risk factor. The Fourth Coleman factor considers whether the incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform. It is apparent that the injury in this case occurred during the scope of activities that West Jefferson was licensed to perform— transporting a patient who had been assessed as a high risk for falls. Thus, this factor is satisfied.
IfiThe fifth Coleman factor is whether the injury would have occurred if the patient had not sought treatment. Here, Mrs. Matherne was admitted to the hospital for treatment of her leg hematoma. If she had not sought treatment, she would not have been transported by the employee, and the fall would not have occurred. Therefore, the fifth Coleman factor is also satisfied. Finally, Mrs. Matherne does not allege that West Jefferson’s actions were intentional; thus the final Coleman factor, whether the tort alleged was intentional, is satisfied.
Although we find that all Coleman factors have been satisfied in this case, Mrs. Matherne relies on this Court’s decision in Jordan v. Stonebridge, 03-0588 (La.App. 5 Cir. 11/25/03), 862 So.2d 181, to argue that her claim does not fall within the statutory *538 definition of medical malpractice. In that case, we determined that a resident’s injury, sustained while under full-time custodial care at a nursing home facility, did not fall under the LMMA. Jordan, supra, at 184. However, Jordan is distinguishable and does not support Mrs. Matherne’s argument. There, we found that Jordan was not undergoing medical treatment at the nursing home and that an assessment of his medical condition was not required. In this case, however, Mrs. Matherne was, in fact, admitted to West Jefferson for medical treatment of her leg hematoma, and she had a medical assessment performed to prevent exactly the type of injury that occurred.
Thus, by applying the six Coleman factors, we find that the trial court did not err in granting the exception of prematurity. The judgment appealed from is affirmed.

AFFIRMED