JENNIFER RAVAIN, INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILD, JASON RAVAIN

NO. 23-C-425

VERSUS

FIFTH CIRCUIT

COURT OF APPEAL

OCHSNER MEDICAL CENTER KENNER, LLC, JEFFERSON PARISH SCHOOL BOARD, AND EAST JEFFERSON HIGH SCHOOL

STATE OF LOUISIANA

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

*Wiseman*

Linda Wiseman
First Deputy, Clerk of Court

September 28, 2023

Linda Wiseman
First Deputy Clerk

**IN RE** OCHSNER MEDICAL CENTER KENNER, LLC

**APPLYING FOR** SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE DANYELLE M. TAYLOR, DIVISION "O", NUMBER 822-804

Panel composed of Judges Fredericka Homberg Wicker, Robert A. Chaisson, and Scott U. Schlegel

**WRIT GRANTED**

In this writ application, defendant, Ochsner Medical Center Kenner, L.L.C. ("Ochsner"), seeks review of the trial court's July 20, 2023 judgment, denying its dilatory exception of prematurity. For the following reasons, we grant the writ application, sustain the exception of prematurity, and dismiss plaintiff's claims against Ochsner without prejudice.

***Facts and Procedural History***

On November 15, 2021, plaintiff, Jennifer Ravain, individually and on behalf of her minor child, Jason Ravain, filed this lawsuit against Ochsner, the Jefferson Parish School Board, and East Jefferson High School. In her petition, Ms. Ravain contends that on October 20, 2021, Jason was in his home room class

23-C-425

at East Jefferson High School when there was an announcement inviting students to go to the Ochsner mobile vaccine unit if they wanted to receive a COVID shot.

Ms. Ravain asserts that Jason, who was 16 years old at the time, approached the Ochsner mobile unit and was met by two nurses who took his basic information, such as his name and date of birth, and then gave him a consent form and told him to sign it. According to Ms. Ravain, Jason believed he was just signing up for the shot, and he asked the nurses when he would be scheduled to receive it. When Jason was told he would receive the shot "right then and there," he did not know what to do, and the shot was immediately administered.

In her petition, Ms. Ravain contends that Ochsner committed the intentional tort of battery, because as a minor, Jason did not have the legal capacity to consent to the shot. She further asserts that there are inherent risks associated with COVID shots, but Ochsner still failed to obtain her consent, thereby causing both her and Jason to suffer extreme emotional distress. She also claims damages for loss of her parental right to direct the medical care of her minor child.

On October 11, 2022, Ochsner filed a dilatory exception of prematurity, asserting that plaintiff's claims are based on lack of informed consent and are therefore, subject to the Louisiana Medical Malpractice Act ("LMMA"). Ochsner contends that Ms. Ravain's claims are premature, because they have not been presented to a medical review panel.[1] On January 2, 2023, Ms. Ravain filed a memorandum in opposition to Ochsner's exception of prematurity, arguing that the LMMA does not apply because Jason was not a "patient" and Ochsner committed an intentional tort, which is not included in the definition of "malpractice."

---

[1] La. R.S. 40:1231.8(A)(1)(a) provides, in pertinent part:

> All malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel established as hereinafter provided for in this Section.

A hearing on the exception of prematurity was held on May 31, 2023, and the trial court took the matter under advisement. On July 20, 2023, the trial court rendered a judgment denying the exception and issued written reasons for judgment. In its reasons, the trial court found that Jason was not a "patient" under the LMMA, because he did not have parental consent to establish a patient-physician relationship. The court further found that Jason did not receive "medical care," because he did not seek a diagnosis or information regarding a physical condition. Also, the court found that Jason did not receive "treatment," because he was only seeking information and was not expecting to receive the COVID shot that day.

### *Law and Discussion*

A dilatory exception of prematurity, as provided for in La. C.C.P. art. 926(1), questions whether a cause of action has matured to the point where it is ripe for judicial determination. *Dupuy v. NMC Operating Co., L.L.C.*, 15-1754 (La. 3/15/16), 187 So.3d 436, 438; *Williamson v. Hospital Service Dist. No. 1 of Jefferson,* 04-0451 (La. 12/1/04), 888 So.2d 782, 785. Under the LMMA, a medical malpractice claim against a qualified health care provider is subject to dismissal on a timely exception of prematurity if such claim has not first been presented for review to a medical review panel. La. R.S. 40:1231.8; *Dupuy*, 187 So.3d at 438. An exception of prematurity neither challenges nor attempts to defeat any of the elements of the plaintiff's cause of action, but instead asserts that the plaintiff has failed to take some preliminary step necessary to make the controversy ripe for judicial involvement. *Id.*

Appellate courts conduct a *de novo* review of the trial court's ruling on an exception of prematurity, because the issue of whether a claim sounds in medical malpractice involves a question of law. *Perry v. State Farm Mut. Auto. Ins. Co.*, 16-418 (La. App. 5 Cir. 12/14/16), 209 So.3d 308, 311; *Matherne v. Jefferson*

3

*Parish Hospital Dist. No. 1*, 11-1147 (La. App. 5 Cir. 5/8/12), 90 So.3d 534, 536, *writ denied*, 12-1545 (La. 10/12/12), 98 So.3d 873. The burden of proving prematurity is on the moving party, which in a medical malpractice case, must show that it is entitled to a medical review panel because the allegations fall within the scope of the LMMA. *Kelleher v. University Medical Center Management Corp.*, 21-0011 (La. 10/10/21), 332 So.3d 654, 657; *Perry*, 209 So.3d at 311.

In this writ application, Ochsner argues that the trial court erred by denying its exception of prematurity. It asserts that the LMMA applies in this case and that plaintiff's claims must first be presented to a medical review panel. We agree.

The LMMA and its limitations on tort liability for a qualified health care provider apply only to claims "arising from medical malpractice," while all other tort liability on the part of the qualified health care provider is governed by general tort law. *LaCoste v. Pendleton Methodist Hosp., L.L.C.*, 07-0008, 07-0016 (La. 9/5/07), 966 So.2d 519, 524; *Coleman v. Deno*, 01-1517 (La. 1/25/02), 813 So.2d 303, 315. La. R.S. 40:1231.1(A)(13) provides, in pertinent part:

> "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient….

The parties do not dispute that Ochsner is a qualified health care provider. Ms. Ravain contends, and the trial court found, that the LMMA does not apply in this matter because Jason was not a "patient" and did not receive "health care."

La. R.S. 40:1231.1(15) of the LMMA provides that a "patient" means "a natural person….who receives or should have received health care from a licensed health care provider, under contract, express or implied." In the present case, Jason was a "patient" under the LMMA, because he is a natural person who

4

received health care from a licensed health care provider when he received the COVID shot.

La. R.S. 40:1231.1(9) provides that "health care" is "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement…." Vaccinations have been considered as "health care" or "medical care" in the caselaw. *See Hayes v. University Health Shreveport, L.L.C*, 21-1601 (La. 1/7/22), 332 So.3d 1163; *Thompson v. Center for Pediatric and Adolescent Medicine, L.L.C.*, 17-1088 (La. App. 5 Cir. 3/15/18), 244 So.3d 441, *writ denied*, 18-583 (La. 6/1/18), 243 So.3d 1062; *Boyd v. Louisiana Medical Mut. Ins. Co.*, 593 So.2d 427 (La. App. 1 Cir. 1991), *writ denied*, 594 So.2d 877 (La. 1992). In her petition, Ms. Ravain also refers to the COVID shot as medical care.[2] The act of administering the COVID vaccine[3] was an act performed by a health care provider during Jason's medical care or treatment, and thus, it is considered health care.

Ms. Ravain asserts that Ochsner's action of administering the COVID vaccine to her son was not included under the definition of "malpractice" because it was an intentional tort. She claims Ochsner committed the intentional tort of battery, because Jason did not have the legal capacity to consent to receiving the COVID shot. However, in *Lugenbuhl v. Dowling*, 96-1575 (La. 10/10/97), 701 So.2d 447, the Louisiana Supreme Court rejected battery-based liability in lack of informed consent and no consent cases, and found that such cases sound in medical malpractice and must be submitted to a medical review panel. *See also Thibodeaux v. Jurgelsky*, 04-2004 (La. 3/11/05), 898 So.2d 299; *In re Medical*

---

[2] In her petition, Ms. Ravain refers to "medical treatment" and "informed consent to medical treatment." She also seeks damages for "Loss of Parental Right to Direct the medical care of her minor child."

[3] Plaintiff argues that there is no such thing as a COVID "vaccine," because the shots did not prevent contraction or transmission of the disease. However, the effectiveness of the vaccine is not at issue in this writ application.

*Review Panel for Claim of Larche*, 97-2397 (La. App. 4 Cir. 4/15/98), 714 So.2d 56; and *Maybrier v. Louisiana Medical Mut. Ins. Co.*, 08-1508 (La. App. 3 Cir. 6/10/09), 12 So.3d 1115, n. 1, *writ denied*, 09-1558 (La. 10/9/09), 18 So.3d 1287.

Ms. Ravain also asserts that Ochsner failed to obtain parental consent prior to administering the vaccine and that the consent form signed by Jason was invalid due to his lack of capacity as a minor. These claims pertaining to lack of consent fall under the LMMA. In *Lugenbuhl,* 701 So.2d at 452-453, the Louisiana Supreme Court found that cases arising from lack of informed consent or no consent to medical treatment are subject to the provisions of the LMMA. *See also Barnes v. Harandi*, 98-0781 (La. App. 4 Cir. 12/9/98), 727 So.2d 530, 533.

In *Filogene v. Brown*, 03-1451 (La. App. 4 Cir. 3/31/04), 871 So.2d 1206, *writ denied*, 04-1050 (La. 6/25/04), 876 So.2d 836, the plaintiff, individually and on behalf of her minor child, filed suit against a doctor, alleging that the doctor performed an abortion on her thirteen-year-old daughter without verifying her age or obtaining valid parental consent. The doctor filed an exception of prematurity, arguing that the plaintiff was required to submit her claims to a medical review panel prior to commencing a civil action. After a hearing, the trial court maintained the exception of prematurity. *Id.* at 1207. On appeal, the plaintiff argued that her claims against the doctor were excluded from the LMMA because the procedure to terminate her daughter's pregnancy was an intentional tort. The Fourth Circuit noted that in *Lugenbuhl*, the Louisiana Supreme Court rejected battery-based liability in lack of informed consent and no consent cases, and found that these claims must be submitted to a medical review panel. *Filogene*, 871 So.2d at 1208. The *Filogene* court affirmed the trial court's judgment maintaining defendant's exception of prematurity, and stated that "any allegations that Defendant failed to obtain proper consent prior to performing the procedure are

6

medical malpractice allegations and require submission to a medical review panel prior to commencement of an action." *Id.*

Similarly, in the present case, Jason was a minor when he received the COVID shot without parental consent. Thus, Ms. Ravain's claims arise from lack of informed consent, or no consent, and are considered medical malpractice allegations that must first be presented to a medical review panel.

Based on our *de novo* review and considering the applicable law, we find that plaintiff's claims in this lawsuit are subject to the provisions of the LMMA and must first be submitted to a medical review panel. Accordingly, we grant Ochsner's writ application, sustain its exception of prematurity, and dismiss Ms. Ravain's claims without prejudice.

Gretna, Louisiana, this 28th day of September, 2023.

**FHW**
**RAC**
**SUS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS DAY **09/28/2023** TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**23-C-425**

### E-NOTIFIED

24th Judicial District Court (Clerk)
Honorable Danyelle M. Taylor (DISTRICT JUDGE)
Nadia M. de la Houssaye (Relator)          Carmen M. Rodriguez (Relator)
                                            Olden C. Toups, Jr. (Respondent)
                                            G. Shelly Maturin, II (Respondent)

### MAILED

Jason M. Welborn (Respondent)
Jacob H. Hargett (Respondent)
Attorney at Law
1540 West Pinkook Road
Lafayette, LA 70503

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Jacob H. Hargett
Attorney at Law
1540 West Pinkook Road
Lafayette, LA 70503
23-C-425                    09-28-23

SECURITY

9590 9402 2434 6249 3572 07

2. Article Number *(Transfer from service label)*

7016 2070 0000 0954 7844

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X *Rhonda Doucet*
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*
*Rhonda Doucet*

C. Date of Delivery
10/2/23

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt